**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-4605**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHARLES RAYMOND WABLE,

Defendant - Appellant.

---

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.  Thomas S. Kleeh, Chief District Judge.  (1:22-cr-00037-TSK-MJA-1)

---

Argued:  January 30, 2026                                Decided:  July 10, 2026

---

Before AGEE, BENJAMIN, and BERNER, Circuit Judges.

---

Affirmed by published opinion. Judge Berner wrote the opinion, in which Judge Agee and Judge Benjamin joined.

---

**ARGUED:**  Jonathan D. Byrne, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  Andrew R. Cogar, OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg, West Virginia, for Appellee. **ON BRIEF:** Wesley P. Page, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  Matthew L. Harvey, United States Attorney, Randolph J. Bernard, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg, West Virginia, for Appellee.

BERNER, Circuit Judge:

Charles Wable challenges his 180-month prison sentence for unlawfully possessing a firearm and witness tampering. On appeal, Wable argues that the district court incorrectly calculated his base offense level under the United States Sentencing Guidelines. He also asserts that the district court abused its discretion by failing to consider his nonfrivolous sentencing argument. We disagree and affirm Wable's sentence.

## I.      Background

While on supervised release for unrelated convictions, Wable acquired a number of weapons, including a machete, brass knuckles, and a loaded assault-style rifle. United States Probation officers discovered the weapons during a routine home visit. Wable subsequently pressured a young man to testify falsely at Wable's revocation hearing that the rifle belonged to him rather than Wable. The young man later recanted and testified that Wable had not only paid him to lie but had also threatened to harm his mother if he refused to do so. Wable was subsequently convicted by a jury of unlawful possession of a firearm, pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and tampering with a witness by corrupt persuasion, pursuant to 18 U.S.C. § 1512(b)(1).

In advance of Wable's sentencing for these convictions, the United States Probation Office prepared a presentence investigation report (PSR). A PSR compiles relevant information on the individual and the applicable Sentencing Guidelines for use by the sentencing court in determining the appropriate sentence. Fed. R. Crim. P. 32(c)–(d). The Sentencing Guidelines provide an advisory framework for sentencing that considers both

2

the offense of conviction and the individual's personal characteristics. To calculate the applicable sentencing range, the Sentencing Guidelines first assign a number known as the "base offense level." The base offense level for unlawfully possessing a firearm ranges from six to twenty-six depending on the particular circumstances of the defendant's offense. *See* U.S.S.G. § 2K2.1(a).

The Probation Office calculated Wable's base offense level at the highest end of that range, twenty-six, because of the type of firearm Wable possessed and because Wable had previously been convicted of two "controlled substance offense" felonies. *Id.* § 2K2.1(a)(1). The Probation Office identified two prior controlled substance felony convictions as the basis for its calculation in Wable's PSR: a 2007 federal felony conviction for possession with intent to distribute cocaine and a 2006 West Virginia state-law felony conviction for cultivating marijuana.

Although he was represented by legal counsel, Wable submitted a number of objections to the report *pro se*. Among these objections, Wable argued that the court should not consider his 2006 conviction for cultivating marijuana as a qualifying controlled substance offense because, Wable contended, such cultivation should not be criminalized.

Wable also recounted an incident that he believed should merit a downward departure from the recommended sentencing range. Wable told the court that he had been "chemically assaulted" by correctional officers while in pre-trial detention when he sought medical help for breathing issues related to his chronic obstructive pulmonary disease. Parties' Joint Appendix (J.A.) 38. Wable claimed that the officers sprayed him with a brown substance multiple times, shoved him, and then sprayed him with water before

3

placing him in a medical cell. Although he eventually received medical attention, Wable described experiencing a burning sensation in his face, lungs, eyes, and upper body following the attack, presumably from the brown substance. Wable informed the district court that the injuries he suffered precluded him from being able to testify at his trial. He also stated that he filed a complaint with the United States Marshals Service and attempted to file multiple grievances about this incident.

In imposing a sentence, a district court must be "guided by the Sentencing Guidelines and by the provisions of [18 U.S.C.] § 3553(a)." *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006). The district court must first "correctly calculat[e] the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). Next, the court must provide "both parties an opportunity to argue for whatever sentence they deem appropriate." *United States v. Abu Ali*, 528 F.3d 210, 260 (4th Cir. 2008) (quoting *Gall*, 552 U.S. at 49). The court must conclude by "'consider[ing] all of the § 3553(a)' factors, keeping in mind the 'overarching provision instructing district courts to impose a sentence sufficient, but not greater than necessary[,]' to accomplish the goals of sentencing." *Id.* (internal citations omitted) (quoting *Kimbrough v. United States*, 552 U.S. 85, 101 (2007)). The 3553(a) factors include: 1) the nature and circumstances of the offense and history and characteristics of the defendant; 2) the need for the sentence imposed; 3) the kinds of sentences available; 4) the kinds of sentences and sentencing ranges for the offense; 5) policy statements by the Sentencing Commission; 6) the need to avoid unwarranted sentencing disparities amongst similarly situated individuals; and, 7) the need to provide restitution to victims of the offense. 18 U.S.C. § 3553(a)(1)–(7).

4

During the sentencing hearing for Wable's unlawful possession and witness tampering convictions, the district court first noted that Wable's "objections ha[d] been lodged as part of [the] court's record[.]" J.A. 21. The district court noted, however, that it did not "anticipate speaking about [the objections] at great length[.]" J.A. 21. The court adopted the PSR in full. The district court relied on the PSR to calculate Wable's base offense level as twenty-six. The district court also applied a two-level enhancement under Section 3C1.1 of the Sentencing Guidelines, which permits a district court to adjust a defendant's sentencing range upward where the court finds that the defendant willfully obstructed justice. U.S.S.G. § 3C1.1. On the basis of these calculations, the district court determined that Wable's recommended sentencing range was between 130 to 162 months of imprisonment. Both Wable and the Government accepted these calculations and the district court's adoption of the PSR without objection.

Wable spoke on his own behalf at his sentencing hearing and requested a downward departure from the recommended range. In support of this request, Wable described the sexual and physical abuse he suffered as a young child. He also shared his history of drug addiction, which began during his childhood. Finally, Wable spoke to the circumstances underlying his convictions for unlawfully possessing a firearm and tampering with a witness, including his belief that the evidence had been unlawfully obtained.

The Government urged the district court to impose a sentence on the high-end of the Guidelines range because Wable had been on supervised release at the time of the offenses. It also argued that the nature of the offenses, Wable's lack of remorse, and

5

Wable's extensive criminal history, including a prior conviction for second-degree murder, weighed in favor of a lengthier sentence.

The district court considered the arguments that Wable put forth, both in his *pro se* objections and during the hearing, as well as those of the Government. After weighing the 3553(a) factors, the district court denied Wable's request for a downward departure. To the contrary, the district court determined that "the guidelines range [was] inadequate in this case to address the seriousness of the offense conduct and Mr. Wable's lifelong violent criminal history." J.A. 55. Accordingly, the district court sentenced Wable to 120 months' imprisonment on the firearms conviction and 180 months on the witness tampering conviction, to be served concurrently, along with three years of supervised release.

In imposing this sentence, the district court stressed that it had considered Wable's lack of "any indication of remorse of any kind for what [Wable] did in this case and, frankly, what [Wable had] done [his] entire adult life." J.A. 51. The district court described witnessing the "terr[or]" of the young man who Wable pressured to falsely testify, noting that the man "will carry around the scar of ever having crossed paths with [Wable] . . . [for] the remainder of [his] life." J.A. 53. The district court devoted significant time to reviewing Wable's extensive criminal history. The district court also noted that Wable's supervised release had been "revoked in each and every [one] of those prior federal felony cases at least once, and sometimes on more than one occasion." J.A. 52. On the basis of Wable's decades-long criminal history, the district court concluded that Wable posed a significant risk of recidivism. Finally, the district court stressed the danger posed by Wable's conduct, noting the "arsenal of weapons" that he had amassed. J.A. 52.

6

The district court recommended to the Federal Bureau of Prisons (BOP) that Wable be given credit for time served and be considered for substance abuse treatment and related programming. The court waived the imposition of any fines, although it imposed a mandatory assessment of $200. Finally, the district court recommended that, because of Wable's serious health conditions, the BOP designate him for placement at a federal medical center. In closing, the district court reiterated that:

> Any sentence within the guideline range, frankly, would not account for the seriousness of the offense conduct in this case, and moreover, would result in a lack of punishment, frankly, for both offenses for which Mr. Wable was convicted. The Court also considers, in making the decision to vary upward, Mr. Wable's lengthy, extensive, and violent criminal history, his repeated recidivism despite multiple convictions even in federal court, plus his history of having his supervised release terms revo[ked.]

J.A. 60.

Wable timely appealed his sentence, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.    Analysis

Wable argues on appeal that the district court plainly erred in calculating his base offense level and abused its discretion in failing to consider his nonfrivolous argument at sentencing. For the reasons below, we disagree and affirm the sentence.

### A.  Wable's Base Offense Level

Wable argues, for the first time on appeal, that the district court incorrectly calculated his base offense level. Where a party raises an issue for the first time on appeal,

7

our review is for plain error. *United States v. Olano*, 507 U.S. 725, 732–35 (1993).[1] In order to prevail, Wable must establish that the district court erred, that the error was plain, and that the error affected his substantial rights. *Id.* at 732. Even when all three requirements are met, the decision to grant relief remains within the discretion of this court. *Id.* at 735. We may exercise our discretion to grant relief where we find the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 736.

We begin by recounting the district court's calculation of Wable's base offense level and summarizing the arguments on appeal. Then, we proceed to explain why Wable's challenges fail.

### i.    The District Court's Calculation

In calculating the appropriate Guidelines range, the district court determined that Wable's base offense level for unlawfully possessing a firearm was twenty-six. Sentencing Guidelines Section 2K2.1(a)(1) provides a base offense level of twenty-six if: 1) the offense involved a semiautomatic firearm capable of accepting a large capacity magazine; and 2) the defendant had, as relevant here, at least two prior felony convictions for a

---

[1] In his *pro se* objections to the district court, Wable argued that his 2006 conviction for cultivating marijuana should not qualify as a controlled substance offense for purposes of the Guidelines calculation. On appeal, he raises a new theory. Where a party objected to a Guidelines calculation on the basis of one theory, but on appeal proceeds under a different theory, this court reviews for plain error. *United States v. Lawson*, 128 F.4th 243, 254 (4th Cir. 2025).

controlled substance offense. U.S.S.G. § 2K2.1(a)(1) (2021).[2] Wable does not dispute that he possessed a semiautomatic, large capacity rifle. He argues only that the district court erred in finding that he had two qualifying prior felony convictions for a controlled substance offense.

A controlled substance offense qualifies for purposes of the base offense level calculation where it is:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

The PSR identifies two of Wable's prior convictions as qualifying controlled substance offenses: 1) a 2007 conviction for possession with intent to distribute cocaine in violation of federal law, and 2) a 2006 conviction for cultivating marijuana in violation of West Virginia state law. Our focus is on the second.

With respect to Wable's state-law conviction, the PSR explains that law enforcement officers had seized fifty marijuana plants from Wable's property in West Virginia. The PSR provides no further details about the offense. Relevant here, the PSR does not say under which West Virginia statute Wable was convicted. The district court adopted the PSR in full. Like the PSR, the district court simply assumed that Wable had

---

[2] On appeal, we rely on the Sentencing Guidelines in effect on the date of the defendant's sentencing. *See United States v. Lewis*, 606 F.3d 193, 198–99 (4th Cir. 2010); *see also* U.S.S.G. § 1B1.11(a).

9

been convicted of violating the West Virginia Uniform Controlled Substances Act. The district court did not expressly determine whether Wable's state-law conviction properly qualified as a controlled substance offense for purposes of Section 2K2.1(a)(1).

Wable makes two arguments regarding the qualifying controlled substance offense determination. First, he argues that, contrary to the district court's assumption, he was convicted under the West Virginia General Attempt statute, not the Uniform Controlled Substances Act. A conviction under the General Attempt statute does not qualify for purposes of the Guidelines calculation and therefore the calculation would be incorrect. Second, Wable argues that even if this court assumes his conviction was under the Uniform Controlled Substances Act, it also would not qualify. Wable therefore argues that, regardless of the statute under which he was convicted, the district court plainly erred.

We begin by determining whether the district court erred by treating Wable's conviction as one falling under the West Virginia Uniform Controlled Substances Act rather than one under that state's General Attempt statute. We then analyze the impact on Wable's conviction of *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022).

### ii.     The Relevant Statute

Wable contends that he was convicted of a general attempt offense under the General Attempt statute, not a manufacturing offense under the Uniform Controlled Substances Act. At the time of Wable's sentencing, an attempt offense could not qualify as a controlled substance offense for purposes of Section 2K2.1. *See Campbell*, 22 F.4th at 444–46. Accordingly, if Wable can demonstrate that he was convicted of a general attempt offense, then his sentencing range was improperly calculated.

10

The PSR says that Wable's state-law conviction was for "cultivating marijuana." No such offense is specifically named under West Virginia law. Rather, West Virginia has a general drug statute: the West Virgina Uniform Controlled Substances Act. W. Va. Code § 60A-4-401. That Act makes it a crime "for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance." W. Va. Code § 60A-4-401(a). A subset of "manufacturing" includes the "production" of a controlled substance by "planting, cultivation, growing or harvesting [ ] a controlled substance." W. Va. Code § 60A-1-101(q), (z).

Wable provides on appeal supplementary records from the West Virginia state court that he had not presented below.[3] Though Wable argues that these records show he was convicted under the General Attempt statute, the state court records of this conviction are murky at best.

The state court records provide some indication that Wable was convicted of violating the Uniform Controlled Substances Act. Indeed, Wable was initially indicted under the Act. The sentencing order also states that the jury found him guilty of this offense. The state records, on the other hand, support Wable's contention that he was convicted of violating the General Attempt statute. For example, the sentencing order indicates that Wable was sentenced for the "lesser-included offense" of attempt to cultivate marijuana

---

[3] We may take judicial notice of documents not considered by the district court that may not be reasonably disputed and are material to the appeal. *United States v. Fowler*, 58 F.4th 142, 152 (4th Cir. 2023) (quoting *United States v. Townsend*, 886 F.3d 441, 444 (4th Cir. 2018)). We do so here, taking notice of the state court records. *See* Fed. R. Evid. 201.

11

under the General Attempt statute. Attempt to cultivate marijuana is not, however, a lesser included offense of manufacturing marijuana. W. Va. R. Crim. P. 31(c). Augmenting this confusion, the state court sentenced Wable to one-to-five years' incarceration, the applicable statutory penalty for violating the Uniform Controlled Substances Act. By contrast, the General Attempt statute has a statutory maximum penalty of three years' incarceration.

The timing of Wable's argument proves dispositive. Had Wable objected to the classification of his conviction at sentencing, then the state records' lack of clarity would weigh in his favor. This is because the Government bears the burden before the sentencing court to establish that a prior offense qualifies for purposes of the Guidelines calculation. Now, on appeal, Wable bears the burden under the plain error standard. Because the state court records do not clearly demonstrate that Wable was convicted of a General Attempt offense, we conclude that Wable has not met his burden to establish that the district court plainly erred by assuming he was convicted of violating the Uniform Controlled Substances Act.

We next analyze whether *Campbell* precludes this conviction from qualifying for purposes of the Guidelines calculation.

### iii.    Divisibility of the Uniform Controlled Substances Act

In *United States v. Campbell*, this court held that the sentencing Guideline definition for a qualifying controlled substance offense unambiguously applied only to a completed offense and not to attempt offenses. 22 F.4th 438, 444, 446 (4th Cir. 2022). Where a statute criminalizes both actual and attempted conduct, a defendant's conviction for that offense

12

cannot qualify for purposes of Section 2K2.1(a).[4] *Id.* The West Virginia Uniform Controlled Substances Act was the statute at issue in *Campbell*. Wable argues, therefore, that our precedent in *Campbell* precludes a conviction under that Act from qualifying for purposes of the calculation of the base offense level.

Whether Wable is correct turns on the divisibility of the Uniform Controlled Substances Act. If the statute is not divisible, then our precedent in *Campbell* controls and the district court erred in calculating Wable's base offense level. If the statute is divisible, however, then we must consider whether a manufacturing offense like Wable's should be treated differently than the offense at issue in *Campbell*, even though they are both included in the same statute.

We begin our inquiry with the statutory language. A statute is divisible when it "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Mathis v. United States*, 579 U.S. 500, 505 (2016). For example, a statute criminalizing both "starting or failing to put out a fire" would be divisible. By contrast*,* a statute is indivisible if it sets out a single "set of elements to define a single crime" or "enumerates various factual means of committing a single element." *Id.* at 505–06. Thus, for example, a statute that only criminalizes "starting a fire" or criminalizes "starting a fire, including by matches or explosives," would be indivisible. In the first example, the statute outlines two separate crimes whereas in the latter example, the statute sets forth only one crime or simply

---

[4] The Guidelines were amended in 2023, after Wable was sentenced, to include inchoate offenses as qualifying controlled substance offenses under U.S.S.G. § 4B1.2.

13

describes different ways of committing the same crime. Relevant here, where a statute is divisible, a sentencing Guideline may properly apply to one of the enumerated crimes even if it does not apply to all of them. *See generally id.* at 506–09.

The West Virginia Uniform Controlled Substances Act makes it "unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance." W. Va. Code § 60A-4-401(a). The language of the Act is similar to the South Carolina statute that this court found divisible in *United States v. Boyd*. 55 F.4th 272, 276-77 (4th Cir. 2022) (analyzing S.C. Code Ann. § 44-53-370(a)(1)). Like the statute in *Boyd*, the Act lists the offenses in the disjunctive, establishing separate offenses for manufacturing, delivering, or possessing with intent. *See* W. Va. Code § 60A-4-401(a). We therefore conclude that the statute is divisible.

Having concluded that the Act is divisible, we must identify which of the enumerated crimes forms the basis of Wable's conviction. *See Mathis*, 579 U.S. at 505-06. This is known as the "modified categorical approach," whereby we look to "a limited class of documents" such as the "indictment, jury instructions, or plea agreement and colloquy," to determine the defendant's specific crime. *Id.* We must then determine if the offense of conviction properly qualifies for purposes of Section 2K2.1(a). *Id.*

Wable was convicted for cultivating marijuana, a manufacturing offense under the Uniform Controlled Substances Act, not of delivering a controlled substance, the crime at issue in *Campbell*. The Act defined "delivery" as "the actual, constructive or *attempted transfer* from one person to another of" controlled substances. 22 F.4th at 441–42 (quoting W. Va. Code. § 60A-1-101(h) (emphasis in original)). A person convicted of delivering a

14

controlled substance under the Act may have only *attempted* delivery. *Id.* at 444. Therefore, *Campbell* held that a delivery offense under the Act does not qualify as a controlled substance offense for purposes of Section 2K2.1(a).

The "manufacturing" offense does not suffer the same defect as the "delivery" offense. The Act defines "manufacturing" as "the production, preparation, propagation, compounding, conversion or processing of a controlled substance." W. Va. Code. § 60A-1-101(q). The Act further defines "production" as "the manufacture, planting, cultivation, growing or harvesting of a controlled substance." *Id.* § 60A-1-101(z). By its own definitions, the Act criminalizes the substantive offenses enumerated above and does not encompass attempt offenses. A conviction for manufacturing a controlled substance under the Act could not encompass an attempt. Therefore, manufacturing offenses properly qualify as controlled substance offenses for purposes of Section 2K2.1(a)(1). *See, e.g.*, *United States v. Groves*, 65 F.4th 166, 171–74 (4th Cir. 2023) (distinguishing a federal drug distribution statute from the statute at issue in *Campbell* because the federal statute does not criminalize attempt); *United States v. Miller*, 75 F.4th 215, 229–31 (4th Cir. 2023) (same under the North Carolina statute); *United States v. Davis*, 75 F.4th 428, 441–45 (4th Cir. 2023) (South Carolina statute); *United States v. Suncar*, 142 F.4th 259, 266–67 (4th Cir. 2025) (Pennsylvania statute); *United States v. Nelson*, 151 F.4th 577, 580–82 (4th Cir. 2025) (Virginia statute).

Though Wable was convicted under the same statute at issue in *Campbell*, our holding in *Campbell* does not control with respect to manufacturing offenses. Accordingly,

15

the district court did not plainly err in finding that Wable's conviction for cultivating marijuana qualifies as a controlled substance offense.

### B.  Nonfrivolous Sentencing Argument

Finally, Wable asserts on appeal that the district court failed to address his nonfrivolous argument for a lesser sentence. Specifically, Wable argued before the sentencing court that his "chemical[ ] assault[ ]" by correctional officers at the regional jail warranted a downward departure in his sentence. J.A. 38. This court reviews claims of a district court's failure to address a nonfrivolous argument under the abuse of discretion standard. *United States v. Lynn*, 592 F.3d 572, 585 (4th Cir. 2010).

At sentencing, the district court must conduct an individualized assessment of each case. This includes an obligation to "consider the defendant's nonfrivolous arguments for a downward departure[.]" *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017) (citing *Gall*, 552 U.S. at 50). In assessing whether the district court has considered the defendant's arguments, we look to the "statements contained in the sentencing record." *Id.* at 521. The adequacy of the district court's explanation "depends on the complexity of each case." *Id.* at 518. There is "no mechanical approach to our sentencing review." *Id.*

On the record before us, we find no abuse of discretion. The district court noted repeatedly that it had taken into account all of Wable's submissions. It opined at length about Wable's various mitigation arguments while weighing the 3553(a) factors. Wable thus cannot overcome the deference owed to the district court.

16

### III.    Conclusion

For the reasons above, we affirm Wable's sentence.

*AFFIRMED*